### TRI-TECH MACHINE SALES, LTD., Plaintiff,

v.

### ARTOS ENGINEERING COMPANY, Defendant.

No. 95–C–401.

United States District Court, E.D. Wisconsin.

June 18, 1996.

As corrected June 19, 1996.

Marola & Bohren by Michael O. Bohren, Milwaukee, WI, for Plaintiff.

Davis & Kuelthau by Robert K. Steuer, Milwaukee, WI, for Defendant.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

Before the court is the motion of defendant, Artos Engineering Company ["Artos"], for sanctions pursuant to Rule 11, Federal Rules of Civil Procedure. The motion will be denied.

The plaintiff, Tri–Tech Machine Sales, Ltd. ["Tri–Tech"], filed a complaint against Artos and its alleged subsidiary, Diamond Enterprises, Inc. ["Diamond"], charging that the defendants had committed various anti-trust violations under the Sherman Act, 15 U.S.C. § 2; the complaint also accused the defendant with false advertising under the Lanham Act, 15 U.S.C. § 1125.

Along with its complaint, the plaintiff filed a motion for a preliminary injunction seeking to require Artos to sell Artos parts to it. On May 22, 1995, the plaintiff filed an amended complaint which, among other things, dropped the plaintiff's claims against Diamond. By recommendation of February 26, 1996, magistrate judge Patricia J. Gorence,

to whom the case was originally assigned, recommended that the plaintiff's motion for a preliminary injunction be denied. The magistrate judge concluded that Tri–Tech had failed to establish that it had some likelihood of succeeding on the merits of its anti-trust claims or that it would suffer irreparable harm if the injunction did not issue. The case was then reassigned to district judge Rudolph T. Randa who adopted the magistrate judge's recommendation, in full, by order of April 2, 1996. The case was then transferred to me by random reassignment.

On April 22, 1996, Artos filed the motion now before this court seeking sanctions under Rule 11, Federal Rules of Civil Procedure. Artos requests an award of its costs and reasonable attorney's fees as a sanction for the plaintiff's alleged violation of Rules 11(b)(2) and (b)(3), Federal Rules of Civil Procedure.

### I.   AMENDED COMPLAINT

The following allegations are set forth in the plaintiff's amended complaint. Artos manufactures custom wire processing equipment and replacement parts for its equipment. Tri–Tech rebuilds and repairs Artos wire processing equipment. When Tri–Tech was originally formed in 1985, Artos sold it the parts necessary for rebuilding the Artos equipment.

Tri–Tech's only known competitor for the sale of rebuilt wire processing equipment is Diamond. Diamond allegedly was formed by Artos to compete directly with Tri–Tech for rebuilding and repairing Artos equipment.

In 1991, Artos terminated the supply of its parts to Tri–Tech. Although the prohibition was later lifted, it was imposed again on December 23, 1992. During the initial termination in 1991, Tri–Tech sought other sources for Artos parts including third-party owners and users of Artos wire processing equipment. In 1995, Tri–Tech purchased Artos parts from Roytech Industries ["Roytech"]. When Artos became aware of these third-party purchases, it advised Tri–Tech and Roytech that it would no longer sell any equipment to Roytech until Roytech stopped selling Artos parts to Tri–Tech.

According to Tri–Tech, Artos' refusal to market its component parts to Tri–Tech prevented it from competing in the market for the sale of rebuilt Artos equipment. Tri–Tech charges that Artos' conduct denied it access to Artos' component parts and represented an attempt by Artos to monopolize the component parts market and to remove Tri–Tech as a competitor in the sale of new machines and in the repair of existing machines.

### II.   APPLICABLE LAW

Rule 11 provides, in pertinent part:

**(b) Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after inquiry reasonable under the circumstances,—

\*      \*      \*      \*      \*      \*

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

\*      \*      \*      \*      \*      \*

**(c) Sanctions.** If, after, notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Rule 11(c)(1)(A), Federal Rules of Civil Procedure, directs that a motion for sanctions shall be initiated as follows:

It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after ser-

vice of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

Artos' motion for sanctions seeks relief under Rule 11(b)(3), Federal Rules of Civil Procedure, relating to the following factual allegations in Tri–Tech's original complaint (emphasis in original): (1) "all allegations of the *Complaint* alleging the existence of a market and the monopolization of the market ..."; and (2) "the allegation of paragraph 27 that Tri–Tech was injured to the extent of at least $1,500,000.00 annually...." In addition, Artos seeks sanctions under Rule 11(b)(3), Federal Rules of Civil Procedure, for the factual allegations contained in Tri–Tech's Brief in Support of Motion for Preliminary Injunction that Tri–Tech will be forced out of business.

Artos also argues that sanctions should be awarded under Rule 11(b)(2), Federal Rules of Civil Procedure, with respect to Tri–Tech's claims that Artos violated § 2 of the Sherman Act and did so by depriving Tri–Tech of access to an "essential facility."

## II. ANALYSIS

### A. Plaintiff's Claim of "Essential Facility" is Not Frivolous

█ Artos argues that Tri–Tech's reliance on the "essential facilities" doctrine for its Sherman Act claim was frivolous. Under the essential facilities doctrine, a firm controlling an essential facility—that is, "a facility that cannot reasonably be duplicated and to which access is necessary if one wishes to compete"—is obligated to make that facility available to competitors on nondiscriminatory terms. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 539 (7th Cir.1986). A refusal to deal in the context of an essential facility constitutes a violation of § 2 of the Sherman Act because control of an essential facility can " 'extend monopoly power from one stage of production to another, and from one market to another.' " *Id.* (quoting *MCI Communications Corp. v. American Telephone & Tele-*

*graph Co.*, 708 F.2d 1081, 1132 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983)).

The defendant contends that by invoking the essential facilities doctrine, Tri–Tech sought to characterize Artos' parts as an essential facility. Artos maintains that this characterization is not warranted by existing law insofar as the essential facilities cases have involved the domination of "facilities" of a "grand scale" such as the Chicago stadium, *Fishman*, 807 F.2d 520, millions of miles of telephone cable, *MCI Communications Corp.*, 708 F.2d 1081, three of four ski slopes in Aspen, *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1521 (10th Cir.1984), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), an electric power plant, *Otter Tail Power Company v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), and the only railroad terminal in town, *United States v. Terminal Railroad Association of St. Louis*, 224 U.S. 383, 32 S.Ct. 507, 56 L.Ed. 810 (1912).

█ I believe that the defendant is technically correct when it argues that no case has expressly held that a manufacturer's stock of spare parts is an essential facility. However, even if that argument is correct, it does not render Tri–Tech's claim frivolous under the Sherman Act. The essential facilities doctrine does not unequivocally require that a facility be of a grand nature as suggested by the defendant, nor is the doctrine specifically inapplicable to tangibles such as a manufacturer's spare parts. *See* Irving Scher, *Antitrust Advisor* § 1.29 at 1–60 (4th ed. 1995) ("The term 'facility' can apply to tangibles such as sports or entertainment venues, means of transportation, the transmission of energy or the transmission of information and to intangibles such as information itself.").

The defendant argues that it sells its parts to over 3,000 customers for the purpose of repairing and rebuilding Artos' machines. However, the plaintiff maintains that it provides repairs requiring "sophisticated servicing" that can only be performed by plaintiff and Diamond.

In my opinion, Tri–Tech's assertion of the claim that Artos had unlawfully controlled an essential facility is not groundless, frivolous or "laughable."

### B.   Tri–Tech's Factual Assertions

1.   *Plaintiff was injured "in their business to the extent of at least $1,500,000 annually."*

Artos contends that Tri–Tech's allegations in paragraphs 22 and 27 of the original complaint that it had incurred injury to its business "to the extent of $1,500,000.00" as a result of Artos' refusal to sell parts to Tri–Tech have no evidentiary support. According to Artos, Tri–Tech's own financial records, which were available to Tri–Tech when it filed its original pleading, do not support Tri–Tech's assertion that it had already been injured financially in the amount of $1,500,-000.

Artos' argument overlooks the fact that Tri–Tech filed an amended complaint on May 22, 1995—21 days after Artos had *served* its motion for sanctions on Tri–Tech. *See* Rule 11(c)(1)(A), Federal Rules of Civil Procedure. Tri–Tech amended paragraph 22 of the original complaint to allege that because of the defendant's conduct the "Plaintiff *will* sustain[ ] injury to its business to the extent of at least $1,500,000.00 in annual sales...." (Amended Complaint ¶ 22.) (Emphasis added.) Tri–Tech also amended (and renumbered) paragraph 27 of the original complaint to allege that "As a result of Defendant Artos' attempted monopoly ... Plaintiff *will be* injured in its business to the extent of at least $1,500,000.00 in annual sales...." (Amended Complaint ¶ 26.) (Emphasis added.)

These amendments to the challenged paragraphs of the original complaint—paragraphs 22 and 27—indicate that Tri–Tech was invoking the "safe-harbor" provision of Rule 11(c)(1)(A), by correcting the contested allegations within the applicable time period. Tri–Tech's amended complaint does not contain an allegation that Tri–Tech had already been injured to the extent of $1,500,000.00— which is the factual allegation of which the defendant complains. Accordingly, I find that Tri–Tech "appropriately corrected" the challenged factual allegation such that sanctions should not be awarded. *See* Rule 11(c)(1)(A), Federal Rules of Civil Procedure.

2.   *Tri–Tech "will be forced out of business" if Artos is not compelled to sell Tri–Tech parts.*

Artos contends that Tri–Tech's assertion in its Brief in Support of Motion for Preliminary Injunction that it would be forced out of business if Artos is not compelled to sell Tri–Tech parts and components for Artos machines is without any factual basis. As support for its position that this factual assertion lacked an evidentiary basis, Artos points to the fact that three of Tri–Tech's witnesses testified at the preliminary injunction hearing that Tri–Tech would continue to exist if injunctive relief was not awarded.

The record includes evidence that Artos refused to sell parts to plaintiff directly and to third-parties such as Roytech who had supplied Artos parts to Tri–Tech. Based on this information, the plaintiff believed that its supply of Artos parts eventually would be completely shut off. Because Tri–Tech rebuilds only Artos wire processing equipment, it's fear that it would be forced out of business was not frivolous. Moreover, the testimony referred to by the defendant in support of its position is not compelling because that testimony was premised on the assumption that Tri–Tech could obtain replacement parts from alternate sources.

3.   *Tri–Tech's pre-filing inquiry with respect to "monopolization" and the "market."*

Rule 11 requires the party or attorney to conduct a reasonable inquiry into the facts and law prior to filing a pleading or other paper. Artos insists that Tri–Tech failed to make even a perfunctory inquiry into the existence of a "market" or Artos' alleged intent to monopolize before it filed its complaint or motion for a preliminary injunction. Moreover, Artos argues that, to date, no inquiry into the relevant market and its intent to monopolize has been made by Tri–Tech. Both of these factors are essential to support a claim of attempted monopolization in violation of § 2 of the Sherman Act. *See Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413–1414 (7th Cir.1989).

■ The relevant market, for purposes of establishing an anti-trust claim, consists of the area in which sellers effectively compete. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 483, 112 S.Ct. 2072, 2090–91, 119 L.Ed.2d 265 (1992). The relevant market has both a product and a geographic dimension. *Standard Oil Co. of New Jersey v. United States,* 221 U.S. 1, 61, 31 S.Ct. 502, 516, 55 L.Ed. 619 (1911).

■ Tri–Tech clearly did not undertake a pre-filing factual inquiry into the existence of a market. With regard to the intent of Artos to monopolize, Tri–Tech apparently regarded the defendant's conduct to be self-evident; to the extent that *Eastman Kodak* presented similar circumstances, Tri–Tech's reliance was understandable, if misguided.

Rule 11(c) provides that the court *may* impose a sanction for a violation. I conclude that no sanction is warranted. The defendant's motion will be denied.

### *ORDER*

Therefore, IT IS ORDERED that Artos' "Motion for Sanctions" be and hereby is denied, without costs.